IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| **GEORGE JONES #1436799** § | |
| § | |
| V.   § | A-08-CA-788-SS |
| § | |
| **SERGEANT RUIZ, SHANE BENNETT,** § | |
| **VIVIANA MARTINEZ, WILLIAM** § | |
| **HUGHS, ANGELICA DUMARAN,** § | |
| **UNKNOWN DEFENDANT, and** § | |
| **ROBERT D. PITTMON** § | |

**SECOND REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE SAM SPARKS
       UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's amended complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 84); Defendants' Motion for Summary Judgment (Document No. 126); and Plaintiff's response thereto (Document No.133). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## I. BACKGROUND

At the time he filed his original complaint, Plaintiff was an inmate incarcerated at the Travis State Jail of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID").  Plaintiff was subsequently transferred to the Segovia Unit of TDCJ-CID.

Plaintiff files this action pursuant to 42 U.S.C. § 1983.  In his original complaint Plaintiff named only Sergeant Ruiz as a defendant.  Plaintiff originally alleged on June 22, 2008, he was taken to the lieutenant's office for a disciplinary violation he did not do.  Plaintiff explained that on the morning of June 22, 2008, he was on his way to work when Officer Angelica Dumaran passed him and told him to "turn [his] hat around."  Later, seeing him with his hat turned backwards once again, Dumaran told him "in a very disrespectful way" to give her the hat.  Plaintiff alleged he tossed the hat on the floor and told her to get it, in order to "show her some disrespect" in return.  He claimed he threw the hat on the ground, not at Dumaran, and that the hat did not hit her.

Nevertheless, Dumaran called Sergeant Ruiz, who arrived on the scene, handcuffed Plaintiff and took him to the lieutenant's office.  According to Plaintiff, once inside the office, Sergeant Ruiz shoved him into a chair, yanked him up by his shirt, shoved him into the wall several times, and jabbed him in the chest.  Plaintiff maintained at the time he was allegedly assaulted by Sergeant Ruiz his hands were cuffed behind his back and Officer Bennett held his arm.  During the alleged assault, Plaintiff asserted Sergeant Ruiz sprayed spit in his face and threatened him with bodily harm.

As a result of this incident, Plaintiff claimed he was placed in Administrative Segregation ("Ad Seg") for some 12 days, and for at least some of those days was deprived of necessities, such as a toothbrush and toothpaste.  He also claimed he received a back injury, and that subsequent x-

rays have revealed he has a compressed disc in his back. Plaintiff claimed he suffers from back pain, and has been prescribed Ibuprofen for his pain.

Defendant Ruiz moved for summary judgment, arguing he was entitled to Eleventh Amendment immunity and qualified immunity. Ruiz first argued that Plaintiff was unable to show a constitutional violation because the injuries he received, if any, were de minimis. According to Ruiz, on June 22, 2008, Plaintiff was placed in Pre-Hearing Detention ("PHD") after receiving a disciplinary charge. Ruiz asserted, per TDCJ's Disciplinary Rules and Procedures for Offenders, Plaintiff was offered a PHD physical, which Plaintiff refused. Ruiz further asserted, during his stay in PHD, Plaintiff was observed daily for any development of health or mental problems, and a notation was made on a pre-hearing flow sheet to indicate whether Plaintiff had any physical complaints or indications of new trauma. According to Ruiz, Plaintiff was held in PHD from June 22, 2008 through July 3, 2008, and during that period there was no indication that Plaintiff made any complaints of having sustained any injuries as a result of the alleged excessive use of force on June 22, 2008. Ruiz maintained Plaintiff's medical records showed that Plaintiff did not make any complaints regarding back pain until July 14, 2008, over 20 days after the alleged incident occurred.

Ruiz pointed out, when Plaintiff's complaints of back pain were evaluated on July 21, 2008, the treating physician noted that Plaintiff had gained 50 pounds within a year's time period, advised him to lose weight, and found that Plaintiff's condition did not warrant a medical necessity for a lower bunk. Ruiz admitted an x-ray of Plaintiff's back indicates Plaintiff has an abnormal wedge compression of his L1 vertebrae, but argued Plaintiff's condition warranted no more than treatment

with ibuprofen and exercise. Ruiz argued Plaintiff's injuries from the alleged incident on June 22, 2009, were de minimis at best.

Ruiz next argued his actions were objectively reasonable. According to Ruiz, there were no Emergency Action Center Reports on file for an incident taking place on June 22, 2008, involving Plaintiff. Ruiz also asserted, after Plaintiff filed a grievance regarding the alleged incident, his allegations were investigated by the TDCJ's Office of the Inspector General. Ruiz stated Officer Bennett and Lieutenant Martinez were present when he escorted Plaintiff to the office. According to Ruiz, Bennett and Martinez provided statements as part of the investigation. Both Officer Bennett and Lieutenant Martinez stated that Ruiz did not use force on Plaintiff. Ruiz also made a statement as part of the investigation and denied doing anything more than escorting Plaintiff to the office and then to PHD. Ruiz argued, other than Plaintiff's conclusory allegations of wrongdoing, there was no evidence to show the force applied, if any, was not made in a good-faith effort to maintain discipline.

In response, Plaintiff argued the force was not made in good faith, because Plaintiff was in complete compliance, was in handcuffs and did not offer resistance at any time. Plaintiff also asserted he was never offered a PHD physical. Plaintiff denied he waited until July 14, 2008, to receive medical treatment. According to Plaintiff, he sent an I-60 to staff within a few days of the alleged incident, stating he had been injured and requesting help for the pain. Additionally, Plaintiff asserted he received a KOP (keep on person) prescription for Ibuprofen on June 26, 2008, to help with the pain.

On April 30, 2009, the undersigned issued a Report and Recommendation, recommending that Defendant Ruiz's motion for summary judgment be granted in part and denied in part.

Specifically, the undersigned recommended that Plaintiff's claims brought against Defendant Ruiz in his official capacity be dismissed without prejudice for want of jurisdiction and that a trial be with respect to Plaintiff's claims brought against Defendant Ruiz in his individual capacity.

After the Report and Recommendation had been filed, Plaintiff filed multiple motions to amend or supplement the complaint and several motions for discovery. On June 29, 2009, the District Court adopted the Report and Recommendation and dismissed Plaintiff's claims brought against Defendant Ruiz in his official capacity. The District Court also denied Plaintiff's motions to amend or supplement the complaint and granted some of Plaintiff's requests for discovery.

On September 16, 2009, Plaintiff filed an additional motion to amend his complaint. Plaintiff sought to add claims against Sergeant Ruiz and add several new defendants.[1] Because Defendant Ruiz failed to respond to Plaintiff's motion to amend, the unopposed motion was granted on November 9, 2009. Shane Bennett, Viviana Martinez, William Hughs, Angelica Dumaran, Robert D. Pittmon, and an unknown person were added as defendants. The named defendants were served and have filed answers. Plaintiff has not identified the unknown defendant, and service has not been ordered upon this defendant.[2]

In his amended complaint Plaintiff seeks to add the following "charges" against Defendant Ruiz: (1) pain and suffering; (2) punitive damages; (3) conspiracy to cover up illegal activity; (4) excluding and omitting relevant documentation causing injury; (5) refusing Plaintiff medical attention, specifically a PHD; (6) misfeasance; (7) slander; (8) negligence; (9) assault and injury;

---

[1] Most, if not all, of the claims are the result of the affidavits filed by Ruiz and the new defendants in support of Ruiz's previously filed motion for summary judgment.

[2] Plaintiff's claims against the unknown defendant should be dismissed for want of prosecution.

(10) recklessness; (11) manipulating testimony; (12) terroristic threat; (13) defamation of character; (14) emotional distress; (15) falsifying testimony; and (16) mental stress. Plaintiff seeks $500,000 in damages for his first two "charges" and $250,000 for the remaining "charges." In addition, he seeks $350.00 for the filing fee for this case, $14.58 for service expenses incurred by the United States Marshal, and $50,000 in legal fees.

With regard to Defendant Pittmon Plaintiff alleges he reviewed Plaintiff's grievance filed at the prison and failed to properly conduct an investigation. Plaintiff contends had Pittmon conducted an adequate investigation, Pittmon would have discovered medical documentation indicating Plaintiff had suffered injuries. Plaintiff seeks to add the following "charges" against Defendant Pittmon: (1) violating Plaintiff's due process rights; (2) manipulating an investigation in a state remedy; (3) falsifying state documents; (4) deliberate indifference; (5) prejudice; (6) misfeasance; (7) conspiracy; (8) recklessness; (9) negligence; (10) emotional distress; and (11) punitive damages. Plaintiff indicates he is seeking $250,000 for each charge and $10,000 in legal fees.

With regard to Defendant Bennett Plaintiff alleges he maliciously held Plaintiff while he was assaulted by Defendant Ruiz. Plaintiff contends Bennett could have intervened at any time to stop the violence against Plaintiff but refused to do so. Plaintiff seeks to add the following "charges" against Defendant Bennett: (1) accomplice to assault with bodily injury, thereby violating the Eighth Amendment; (2) falsifying state documents, thereby violating the Due Process Clause; (3) conspiracy to cover up illegal activity; (4) recklessness; (5) negligence; (6) misfeasance; (7) deliberate indifference; (8) emotional distress; (9) punitive damages; (10) mental stress; and (11) pain and suffering. Plaintiff seeks $500,000 for charges 9 and 11 and $250,000 for the remaining charges. Plaintiff also seeks $10,000 in legal fees.

With regard to Defendant Martinez Plaintiff alleges she entered the office when he was pinned to the wall by Defendants Ruiz and Bennett. Plaintiff contends Martinez could have intervened and stopped the malicious assault but instead joined in on the name-calling. Plaintiff further contends Martinez falsified state documents in an attempt to cover up the assault. Plaintiff seeks to add the following "charges" against Defendant Martinez: (1) falsifying state documents, thereby denying Plaintiff due process of law; (2) conspiracy to cover up criminal activity; (3) defamation of character; (4) manipulating testimony; (5) emotional distress; (6) slander; (7) punitive damages; (8) mental stress; and (9) negligence. Plaintiff seeks $250,000 for each charge and $10,000 in legal fees.

With regard to Defendant Hughs Plaintiff alleges he falsified state documents to cover up the assault. Plaintiff contends Hughs is included in the conspiracy to hide the assault and failed to do a proper investigation. Plaintiff seeks to add the following "charges" against Defendant Hughs: (1) violating Plaintiff's due process rights; (2) falsifying state documents; (3) conspiracy to cover up criminal activity; (4) mental stress; (5) defamation of character; (6) emotional distress; (7) slander; (8) manipulating testimony; and (9) punitive damages. Plaintiff seeks $250,000 for each charge and $10,000 in legal fees.

With regard to Defendant Dumaran Plaintiff alleges she incited the violence when she falsely claimed that Plaintiff cussed her and hit her in the leg with his hat. Plaintiff asserts Dumaran's offense report is full of contradictions and amounts to perjury similar to her affidavit filed in support of Defendant Ruiz's previously filed motion for summary judgment. Plaintiff seeks to add the following "charges" against Defendant Dumaran: (1) violating Plaintiff's right to due process; (2) falsifying state documents; (3) conspiracy to cover up criminal activity; (4) defamation of character;

(5) emotional distress; (6) mental stress; (7) manipulating testimony; (8) slander; and (9) punitive damages. Plaintiff seeks $250,000 for each charge and $10,000 in legal fees.

Defendants move for summary judgment. They argue they are entitled to sovereign and qualified immunity.

## II. ANALYSIS

A.  Standard of Review Under Fed. R. Civ. P. 56(c)

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322, 106 S. Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24, 106 S. Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. at 2553. The non-moving party must

produce "specific facts" showing a genuine issue for trial, not mere general allegations. FED. R. CIV. P. 56(e); Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

### B. Eleventh Amendment Immunity

Plaintiff does not specify in his amended complaint whether he brings this suit against the defendants in their official capacities, their individual capacities, or both. To the extent Plaintiff sues Defendants in their official capacities, however, Plaintiff's suit is barred by the Eleventh Amendment. Pennhurst State School Hosp. v. Halderman, 465 U.S. 89, 104 S. Ct. 900 (1984). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. Port Auth. Trans-Hudson v. Feeney, 495 U.S. 299, 304, 110 S. Ct. 1868, 1871 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. Green v. State Bar of Texas, 27 F.3d 1083, 1087 (5th Cir. 1994).

In his response to Defendants' Motion for Summary Judgment Plaintiff asserts he is suing the defendants in their official capacities for a "permanent injunction." However, Plaintiff does not

mention what injunction he is seeking other than having the defendants fired. As Plaintiff is not entitled to such relief, Plaintiff's claims against the Defendants in their official capacities should be dismissed without prejudice for want of jurisdiction.

    C.    <u>Qualified Immunity</u>

Defendants assert they are entitled to qualified immunity with respect to Plaintiff's claims brought against them in their individual capacities. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability. <u>Jackson v. City of Beaumont</u>, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." <u>Brady v. Fort Bend County</u>, 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. <u>Waltman v. Payne</u>, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." <u>Reese v. Anderson</u>, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required that the first of these criteria-whether plaintiffs' facts allege a constitutional violation-must be decided at the outset. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Recently, however, the Court reversed course, holding

that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808 (2009).

### 1. Excessive Force

As previously held by the District Court, Plaintiff adduced evidence of sufficient facts, if believed by a jury, to support a claim for excessive force against Defendant Ruiz. Specifically, the District Court concluded there is a genuine issue of material fact as to whether excessive force was applied by Sergeant Ruiz. The District Court denied Defendant Ruiz qualified immunity protection, as the Court was unable to decide whether Ruiz's actions were objectively reasonable as a matter of law. The District Court's ruling is not affected by the filing of Plaintiff's amended or supplemental complaint or the Defendants' Motion for Summary Judgment.

### 2. Denial of Medical Care

Plaintiff appears to allege Defendant Ruiz denied him medical attention when Plaintiff was not provided a PHD physical. The Eighth Amendment proscribes medical care that is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 291 (1976). A prisoner's disagreement with prison officials regarding medical treatment is insufficient to establish an unconstitutional denial of medical care, Norton v. Dimanzana, 122 F.3d 286, 292 (5th Cir. 1997); and "negligent medical care does not constitute a valid section 1983 claim," Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1981 (1994). Deliberate indifference requires a "showing that the official was subjectively aware of the

risk" of serious harm. Id. at 829, 511 U.S. 825, 114 S. Ct. 1970. This very high, subjective standard has not been met in the instant case.

Attached to Defendants' Motion for Summary Judgment is the affidavit of Defendant Ruiz. According to Ruiz, he and Defendant Bennett escorted Plaintiff to Ad Seg. Ruiz admitted he was responsible for notifying medical personnel that Plaintiff was in Ad Seg for PHD, so Plaintiff may receive a PHD physical. According to Ruiz, Plaintiff was placed in Ad Seg at approximately 3:15 a.m. Ruiz asserts medical personnel does not arrive until 5:00 a.m. Ruiz attests at 5:00 a.m. he went to the medical department and notified the medical personnel that an offender was placed in Ad Seg during the night and needed a physical. According to Ruiz, after he notified medical personnel, he filled out the PHD-justification paperwork and forwarded it to the Captain and Wardens. Afterwards, his shift was allegedly over, and he left the facility. Also attached to Defendants' Motion for Summary Judgment are medical records, indicating Plaintiff refused a pre-hearing detention physical at 7:00 a.m. on June 22, 2008. See Defendants' Exhibit C. In his response Plaintiff asserts he did not refuse his physical. Regardless of whether Plaintiff refused his physical, Plaintiff has failed to allege how he was harmed by his placement in Ad Seg without first obtaining a physical. A violation of prison policies does not amount to a constitutional violation. Accordingly, summary judgment is proper with regard to Plaintiff's claim of denial of medical care.

### 3.     Failure to Protect

Plaintiff allegea Defendants Bennett and Martinez failed to protect him from Defendant Ruiz's use of excessive force. Plaintiff claims Bennett held his arm as he was assaulted by Defendant Ruiz. Similarly, Plaintiff alleges Defendant Martinez entered the room while Plaintiff was being assaulted and she failed to intervene and stop the malicious assault.

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847, 114 S. Ct. 1970 (1994).  A prison official may be liable for failing to protect an inmate from another prison guard if he knew of an excessive risk to inmate health or safety posed by the other prison guard and disregarded that risk.  See Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995) ("[A police] officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983 [for the excessive use of force by another officer under the theory of bystander liability."); Hicks v. Page, No. H-08-2486, 2010 WL 793684, at *7 (S.D. Tex. Mar.4, 2010) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate [by another prison guard].... An officer may be liable under section 1983, under a theory of bystander liability, if he (1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent harm, and (3) chooses not to act ."); Williams v. Davis, No. 3:09-CV-0296-B, 2009 WL 928318, at * 3 (N.D. Tex. Apr.6, 2009) (explaining that a prison guard may be liable if he failed to take reasonable measures to protect an inmate from the another prison guard's use of excessive force); Terrell v. Castleberry, No. H-06-2025, 2008 WL 687519, at * 5 (S.D. Tex. Mar.12, 2008) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate.  The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.").

Based on the foregoing law, the court finds Plaintiff has adduced evidence of sufficient facts, if believed by a jury, to support a claim for failure to protect.  Viewing the evidence in the light most

13

favorable to Plaintiff, and indulging all inferences in his favor, the Court cannot find that no constitutional violation occurred as a matter of law. Plaintiff's constitutional right was clearly established. If Defendants Bennett and Martinez acted according to Plaintiff's version of the story, they should have known Defendant Ruiz could not forcefully attack and beat an unresisting prisoner while Bennett and Martinez looked on. If the facts happened as Plaintiff relates them, there is a genuine fact issue as to whether the force used by Defendant Ruiz was applied maliciously and sadistically to cause harm while Defendants Bennett and Martinez failed to protect Plaintiff from the assault. Because of genuine issues of material fact, the Court is unable to decide whether the actions of Defendants Bennett and Martinez were objectively reasonable as a matter of law. Accordingly, summary judgment is not proper with regard to Plaintiff's claims against Defendants Bennett and Martinez for their alleged failure to protect Plaintiff from Defendant Ruiz's alleged assault.

4. Conspiracy

Plaintiff claims Defendants have engaged in a conspiracy to cover up illegal activity. Plaintiff's claims of conspiracy all stem from affidavits made by Defendants, under the penalty of perjury, and other evidence that was presented to the Court as exhibits to Defendant Ruiz's previously filed motion for summary judgment.

To establish a conspiracy claim under § 1983, Plaintiff has to show an actual violation of § 1983 and an agreement by the defendants to commit an illegal act. Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995); Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983." Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986) (internal quotation marks omitted).

In this case, Plaintiff does not allege facts tending to show that the defendants entered into an agreement to deprive him of his constitutional rights. Instead, Plaintiff makes conclusory allegations that Defendants perjured themselves when presenting their affidavits to the Court, falsified unspecified documents or failed to investigate the incident properly. Plaintiff fails to state what right he was deprived of or to show that he has actually suffered an injury by the mere presentation of Defendants' affidavits. As explained by Defendants, Plaintiff has not been prevented from filing and defending his claim with the Court. Without more, Plaintiff's claims of falsified records and a conspiracy are conclusory, unsupported, and insufficient to raise a genuine issue of material fact precluding summary judgment. Accordingly, summary judgment is proper with regard to Plaintiff's claims alleging conspiracy, falsification of documents, falsification of testimony, and manipulation of testimony.

### 5.     Disciplinary Case

Nor has Plaintiff set out any viable claim with regard Defendant Dumaran. Plaintiff contends Dumaran incited the assault when she falsely claimed that Plaintiff cussed at her and hit her in the leg with a hat. He further asserts Dumaran violated prison policies.

As a general rule, a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986). The mere filing of false charges does not amount to a constitutional violation because the deprivation of a liberty interest is effected by the finding of guilty, not by the mere filing of the false charges. Freeman, 808 F.2d at 952-53. In addition, the mere failure of prison authorities to follow prison rules and regulations does not, without more, give rise to a constitutional violation. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir.

1996); Williams v. Treen, 671 F.2d 892, 900 (5th Cir. 1982). Accordingly, summary judgment is proper with regard to Plaintiff's claims brought against Defendant Dumaran.

### 6. Investigation of Grievance

Plaintiff alleges Defendants Pittmon and Hughs failed to adequately investigate his grievance regarding the assault. "[A] prisoner has a liberty interest only in 'freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Plaintiff does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to properly investigate his grievances is indisputably meritless. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, Plaintiff has failed to allege a valid constitutional violation with regard to the investigation of his grievance.

### 7. Slander and Defamation of Character

Included in Plaintiff's laundry list of claims are slander and defamation of character. However, Plaintiff fails to offer anything other than his conclusory statements and has failed to allege a valid claim.[3]

---

[3] In his response Plaintiff attempts to explain that he was slandered and defamed during the investigation of and discipline for his behavior toward Defendant Dumaran. Plaintiff maintains he was punished after a disciplinary hearing and was denied parole. Even if Plaintiff had clarified his claims in his amended complaint, Plaintiff still fails to allege a valid constitutional violation. Plaintiff does not deny is was provided a proper disciplinary hearing pursuant to Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974). In addition, because Plaintiff has no liberty interest in obtaining parole in Texas, he has no claim for violation of due process in the procedures attendant to his parole decision. Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir.1995).

To the extent Plaintiff complains he was cussed and called names his claims also fail. The law is clear that verbal abuse by a prison guard does not give rise to a cause of action under §1983. See Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997) (citing Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)). "We are mindful of the realities of prison life, and while we do not approve, we are 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in our nation's prisons.'" Somers v. Thurman, 109 F.3d 614, 622 (9th Cir.) (quoting Morgan v. Ward, 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988)).

      8.     Negligence

Plaintiff similarly concludes that the defendants were negligent. Plaintiff's conclusory allegation is insufficient to state a claim.

Moreover, a plaintiff may maintain a civil rights suit only if he can show an abuse of government power that rises to a constitutional level. Love v. King, 784 F.2d 708, 712 (5th Cir. 1986); Williams v. Kelley, 624 F.2d 695, 697 (5th Cir. 1980), cert. denied, 451 U.S. 1019, 101 S. Ct. 3009 (1981). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. Baker v. McCollan, 443 U.S. 137, 146, 99 S. Ct. 2689, 2695-96 (1979). See also, Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). It is well settled that negligence on the part of prison officials does not give rise to civil rights claims. Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662 (1986); Marsh v. Jones, 53 F.3d 707, 712 (5th Cir. 1995); Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir. 1988). Accordingly, summary judgment is proper with regard to Plaintiff's negligence claims.

        9.      <u>Miscellaneous Claims</u>

Plaintiff attempts to raise claims for "misfeasance," "assault," "recklessness," "terroristic threat," "emotional distress," "mental stress," "punitive damages," "prejudice," and "pain and suffering." However, these are not claims cognizable under § 1983.

        10.     <u>Criminal Charges</u>

Plaintiff contends criminal charges should be brought against the officers. However, Plaintiff does not have a constitutional right to have someone criminally prosecuted. <u>Oliver v. Collins</u>, 914 F.2d 56 (5th Cir. 1990).

### III. RECOMMENDATION

The undersigned recommends that the District Court **DISMISS WITHOUT PREJUDICE** for want of prosecution Plaintiff's claims brought against the "unknown" defendant. The undersigned further recommends that the District Court **GRANT IN PART AND DENY IN PART** the Motion for Summary Judgment [#126] filed by Defendants Ruiz, Pittmon, Bennett, Martinez, Hughs, and Dumaran. Specifically, Plaintiff's claims brought against these defendants in their official capacities should be **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction and summary judgment should be granted on Plaintiff's remaining claims brought against the defendants in their individual capacities with the exception of Plaintiff's claims against Defendant Ruiz for excessive force and Defendants Bennett and Martinez for failure to protect. A trial should be set for Plaintiff's remaining claims.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

18

being made. The District Court need not consider frivolous, conclusive, or general objections. <u>Battles v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); <u>Douglass v. United Servs. Auto. Assoc.</u>, 79 F.3d 1415, 1428-29 (5th Cir. <u>en banc</u>, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of September, 2010.

_____
ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE